Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 268-7080
spencer@spencersheehan.com

United States District Court
Southern District of New York                              7:20-cv-09589

| | |
|---|---|
| Lovelyn Gordon, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>                    - against -<br><br>Target Corporation,<br><br>                              Defendant | <br><br><br><br><br>Complaint |

        Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

        1.      Target Corporation ("defendant") manufactures, distributes, markets, labels and sells milk-based powders purporting to meet, and be necessary, for the nutritional needs of young children, over 12 months old, under their "Up&Up" brand ("Toddler Next Stage" or "Product").

        2.      Feeding infants and toddlers, including the transition from only breastfeeding or infant formula to the regular family diet is "critical for establishing healthy dietary preferences and preventing obesity in children."[1]

        3.      The American Academy of Pediatrics (AAP) recommends "exclusive breastfeeding for the first 6 months of life with the addition of complementary foods and the continuation of

---

[1] Jennifer L. Harris, and Jennifer L. Pomeranz, "Infant formula and toddler milk marketing: opportunities to address harmful practices and improve young children's diets." Nutrition Reviews (2020).

breastfeeding until at least 12 months of age."[2]

21      After 12 months, experts recommend whole plain cow's milk, water and healthy foods as part of balanced diet.

22      Iron-fortified infant formula is recommended for infants who are not breastfed.

23      Infant formula is defined as "a food which purports to be or is represented for special dietary use for infants by reason of its simulation of human milk or its suitability as a complete or partial substitute for human milk." 21 C.F.R. § 106.3.

4.      "Infant formula" is legally defined as a product for use by persons not more than 12 months old.

5.      Since 2003, rates of breastfeeding have increased significantly, resulting in a decrease in sales of infant formula.

6.      To make up for declining sales of infant formulas, companies have introduced products marketed as "transition formulas," "follow-on formulas," "weaning formulas," "toddler milks" and "growing-up milks" ("GUMs") (collectively, "Transition Formulas") to children older than twelve (12) months.[3]

7.      U.S. Nielsen data shows that advertising spending on transition formula quadrupled between 2003 and 2015, with sales increasing almost threefold during this period.

8.      These products are practically identical to infant formula in that they are based on milk powder with added nutrients.

9.      Transition formulas use an infant formula nutrition panel but use a statement of identity that often uses the words infant and toddler interchangeably.

---

[2] Jennifer L. Pomeranz, Maria J. Romo Palafox, and Jennifer L. Harris. "Toddler drinks, formulas, and milks: Labeling practices and policy implications." Preventive medicine 109 (2018): 11-16 (citing American Academy of Pediatrics (AAP) Committee on Nutrition and World Health Organization (WHO) findings).
[3] *Id*.

10.    For instance, Defendant's infant formula product is identified as "Infant Formula with Iron, Milk-Based Powder."

11.    Defendant's Transition Formula has a deceptively similar name, "Toddler Next Stage, Milk Drink Powder."





12.    The name "Toddler Next Stage – Milk Drink Powder" is deceptive and misleading because it is confusingly similar to the name of the Infant Formula Product.

13.     "Toddler Next Stage – Milk Drink Powder" does not state, in clear terms, what it is in a way that distinguishes it from different foods such as the Infant Formula Product. 21 C.F.R. § 102.5(a).

14.    Through the confusingly similar product names, claims, statements and design of the two products, caregivers of young children are led to believe that the Toddler Next Stage Product is nutritionally appropriate for children of the targeted age group – above 12 months – and implies that infants and young toddlers have identical nutrient requirements, which is false.

| Infant Formula With Iron | Toddler Next Stage |
|---|---|
| Milk-Based Powder | Milk Drink Powder – Natural Milk Flavor With Other Natural Flavors |
| 0 – 12 Months | 1+ Years |
| DHA and Dual Probiotics | DHA and Iron to Help Support Brain Development, Calcium and Vitamin D for Strong Bones |
| Closer to Breast Milk Triple Care | Neuro Support |
| Immunity; Brain; Development | Cognitive; Social; Motor; Language |

15.    The Toddler Next Stage Product is misleading because it contains an Infant Formula nutrition panel (left) in addition to a Nutrition Facts panel (right).

4



16.     Using the Infant Formula nutrition panel on a product not intended for infants is misleading because it gives caregivers the impression that the product is subject to the same scrutiny and oversight of Infant Formula products.

17.     Caregivers receive the incorrect impression that the Toddler Next Stage Product was reviewed by the FDA for use and consumption for their children greater than one year old, when this is not the case.

18.     When faced with the Infant Formula nutrition panel and Nutrition Facts, caregivers are more likely to, and do, only view the Infant Formula panel, because they are accustomed to viewing nutrition information this way from purchasing infant formula.

19.    This means they are less likely to identify the added two grams of sugar in the Toddler Next Stage, in the form of corn syrup solids, absent from the Infant Formula product.

**INGREDIENTS:** NONFAT MILK, CORN SYRUP SOLIDS, VEGETABLE OILS (PALM OLEIN, SOY, COCONUT, HIGH OLEIC (SAFFLOWER OR SUNFLOWER) OIL), GALACTOOLIGOSACCHARIDES (GOS)*, **LESS THAN 2%:** FRUCTOOLIGOSACCHARIDES (FOS)*, LUTEIN, DOCOSAHEXAENOIC ACID (DHA), NATURAL FLAVOR, MIXED TOCOPHEROL CONCENTRATE, MONOGLYCERIDES, SOY LECITHIN, VITAMIN A PALMITATE, VITAMIN D (CHOLECALCIFEROL), VITAMIN E (DL-ALPHA TOCOPHERYL ACETATE), ASCORBYL PALMITATE, THIAMINE HYDROCHLORIDE, RIBOFLAVIN, PYRIDOXINE HYDROCHLORIDE, NIACINAMIDE, FOLIC ACID, CALCIUM PANTOTHENATE, BIOTIN, ASCORBIC ACID, CALCIUM CARBONATE, CALCIUM HYDROXIDE, CUPRIC SULFATE, FERROUS SULFATE, POTASSIUM HYDROXIDE, POTASSIUM BICARBONATE, SODIUM CITRATE, ZINC SULFATE.

20.    Even if caregivers do notice the added sugars, they will have no way of knowing that giving foods to children over a year old which have added sugars is inconsistent and contrary to the nutritional needs of children in this age range.[4]

---

[4] Maria J Romo-Palafox and JL Pomeranz et al., "Infant formula and toddler milk marketing and caregiver's provision to young children," Journal of Maternal and Child Nutrition, vol. 16,3 (2020): e12962. doi:10.1111/mcn.12962

21.     Compared to whole cow's milk, recommended by global health authorities, the Toddler Next Stage Product contains less protein, more calories and more sugars (carbohydrates).

### Nutritional Composition for 8 fl. oz.

| Nutrient | Unit | Whole Cow's Milk | Toddler Next Stage |
|---|---|---|---|
| Energy | cal | 149 | 160 |
| Protein | g | 7.69 | 8.0 |
| Total Fat | g | 7.98 | 8.0 |
| Carbohydrate | g | 12.8 | 26.66 |

22.     Public health research has indicated use of transition formulas such as Toddler Next Stage results in prolonged use of expensive, re-branded, infant formula instead of transitioning infants to cow's milk, water and other sugar-sweetened foods.

23.     In fact, the American Academy of Pediatrics (AAP) Committee on Nutrition and the World Health Organization (WHO) have recommended that beyond 12 months, children's nutritional needs be provided only with whole cow's milk, water and healthy foods.[5]

24.     The similar labeling of the Toddler Next Stage and Infant Formula Products causes caregivers to make inaccurate and ill-advised nutritional purchasing decisions.

25.     For instance, a recent study of caregivers' understanding of transition formula labeling concluded that 52% expected these products to "give toddlers nutrition that they wouldn't get from other sources."[6]

26.     70% of persons surveyed believed transition formulas like Toddler Next Stage is a

---

[5] AAP Committee on Nutrition, 1988. Follow-on formulas follow-up or weaning formulas. Pediatrics 83, 1067 1989; World Health Organization, July 17, 2013. Information concerning the use and marketing of follow-up formula.
[6] Maria J Romo-Palafox and JL Pomeranz et al., Marketing claims on infant formula and toddler milk packages: What do caregivers think they mean? , UCONN Rudd Center for Food Policy & Obesity, September 2019.

suitable drink for toddlers, despite expert recommendations that they offer "no unique nutritional value beyond what could be achieved through a nutritionally adequate diet; furthermore, they contribute added sugars to the diet."[7]

27.     Transition formulas such as Toddler Next Stage is also several times more expensive than whole cow's milk.[8]

28.     According to defendant's website, Toddler Next Stage costs $14.69 for 24 ounces or 680 g.

29.     According to the monthly Retail Milk Prices Report of the United States Department of Agriculture, whole milk in New York City cost $3.85 per gallon in May 2020.[9]

30.     Calculating the total product that can be made by Toddler Next Stage and dividing by its price results in it being $8.11 per gallon.

31.     The Toddler Next Stage is more than twice as much of the recommended alternative, which is a nutritionally superior choice.

32.     Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

33.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

34.     The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

35.     Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

---

[7] *Id*.
[8] Consensus Statement, Healthy Beverage Consumption in Early Childhood: Recommendations from Key National Health and Nutrition Organizations, Robert Wood Johnson Foundation, Healthy Eating Research, Sept. 2019.
[9] Agriculture Marketing Service, Retail Milk Prices Report, May 2020.

36. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $ 14.69 per 680 grams, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

37. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

38. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

39. Plaintiff Lovelyn Gordon is a citizen of New York.

40. Defendant Target Corporation, is a Minnesota corporation with a principal place of business in Minneapolis, Hennepin County, Minnesota and is a citizen of Minnesota.

41. "Minimal diversity" exists because plaintiff Lovelyn Gordon and defendant are citizens of different states.

42. Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

43. Venue is proper in this judicial district because defendant is an entity with the capacity to sue and be sued in its common name under applicable law and is deemed to reside in this judicial district because defendant is subject to the court's personal jurisdiction in this State with respect to this action. *See* 28 U.S.C. § 1391(b)(1); *see also* 28 U.S.C. § 1391(c)(2).

44. Venue is further supported because many class members reside in this District.

Parties

45.     Plaintiff Lovelyn Gordon is a citizen of New York, Yonkers, Westchester County.

46.     Defendant Target Corporation is a Minnesota corporation with a principal place of business in Minneapolis, Minnesota, Hennepin County and is a citizen of Minnesota.

47.     During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within her district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

48.     Plaintiff purchased the Product on one or more occasions, including in or around May 2020, at defendant's store at 500 E Sandford Blvd, Mt Vernon, NY 10550.

49.     Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use for those children in the applicable age-range to whom she was a caregiver, and believed the Product was necessary and/or valuable to the nutritional needs of said children.

50.     Plaintiff was deceived by and relied upon the Product's deceptive labeling.

51.     Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

52.     The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

53.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

<u>Class Allegations</u>

54.    The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

55.    Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

56.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

57.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

58.    Plaintiff is an adequate representatives because her interests do not conflict with other members.

59.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

60.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

61.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

62.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>(Consumer Protection Statutes)</u>

63.    Plaintiff incorporates by reference all preceding paragraphs.

64.    Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

65.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

66.    Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

67.    Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

68.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

69.    Plaintiff incorporates by reference all preceding paragraphs.

70.    Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

71.    Defendant had a duty to disclose the truth about the Product and its nutrition usefulness, or lack thereof.

72.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

73.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

74.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

75.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

76.     Plaintiff incorporates by reference all preceding paragraphs.

77.     The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that it possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

78.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

79.     This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

80.     Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

81.     Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

82.     The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

83.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

84.     Plaintiff incorporates by reference all preceding paragraphs.

85.     Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

86.     Defendant's fraudulent intent is evinced by its failure to accurately identify the

Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

87.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

88.    Plaintiff incorporates by reference all preceding paragraphs.

89.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 14, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-09589
United States District Court
Southern District of New York

Lovelyn Gordon, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Target Corporation,

Defendant

## Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
   Tel: (516) 268-7080
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 14, 2020

/s/ Spencer Sheehan
Spencer Sheehan